UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:18CR740 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| JOSEPH DENNIS, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Joseph Dennis' motion to withdraw his guilty plea.

Doc. 87.   The motion is DENIED.

"A defendant does not have an absolute right to withdraw a guilty plea and bears the burden

of proving that he is entitled to withdraw his guilty plea." *United States v. Ellis*, 470 F.3d 275, 280

(6th Cir. 2006). In fact, "'[w]hen a defendant has entered a knowing and voluntary plea of guilty

at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty

plea should seldom arise.'" *Id.* (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.

1992)).   "A defendant may withdraw a guilty plea 'after the court accepts the plea, but before it

imposes sentence if...the defendant can show a fair and just reason for requesting the withdrawal.'"

*Ellis*, 470 F.3d at 280 (quoting Fed.R.Crim.P. 11(d)(2)(B)). To determine whether the Defendant

has met this burden, the Court considers a number of factors, including:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;

(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

(3) whether the defendant has asserted or maintained his innocence;
(4) the circumstances underlying the entry of the guilty plea;

(5) the defendant's nature and background;

(6) the degree to which the defendant has had prior experience with the criminal justice system; and

(7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (superseded on other grounds by U.S.S.G. § 3B1.1). "The factors listed are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 2015, 2017 (6th Cir. 1996).

The rule regarding the withdrawal of guilty pleas is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quotation and citation omitted). "[I]t is well settled that the movant has the burden of establishing that his presentence motion to withdraw his plea should be granted." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).

In the instant matter, Dennis contends that he received poor advice from his prior legal counsel.  Specifically, Dennis assert that "he felt forced and pressured to accept the plea even though he expressed his desire to Attorney DeVan to go to trial."  Doc. 87 at 3.  Dennis further asserts that he has consistently maintained his innocence throughout these proceedings.  To assist

the Court, an evidentiary hearing was held on May 7, 2020 in which the Court heard testimony from Dennis' prior attorney, Mark DeVan, and from Dennis himself. With that hearing concluded, the Court now reviews the *Bashara* factors.

### 1. Amount of Time Between Plea and Motion

Dennis pled guilty before this Court on October 8, 2019. Dennis did not seek to withdraw his plea until March 3, 2020. The Sixth Circuit has found proper the denials of motions to withdraw on the basis of delays far shorter than the instant case. *See, e.g., United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (upholding the denial of a motion to withdraw on the basis of a sixty-seven-day delay); United States v. Goldberg, 862 F.2d 101, 103 (6th Cir. 1988) (noting that a fifty-five day delay supported denial of a motion to withdraw); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (indicating that a five-week delay supported denial of a motion to withdraw); *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (holding that a seventy-five day delay was alone sufficient to deny withdrawal of a guilty plea).

In evaluating this factor, the Court is mindful that the first discussion that Dennis had with his prior counsel, DeVan, regarding withdrawing his plea did not occur until December 19, 2019. Accordingly, if the Court were to credit that date as the first expression of Dennis' desire to withdraw his plea, he did not indicate such a desire until more than ten weeks after his guilty plea. This this factor weighs against him.

### 2. Reason for Withdrawal and Circumstances Surrounding the Guilty Plea

Dennis appears to argue that his plea should be withdrawn because it was entered with an unsure heart or confused mind. The record, however, does not support this contention.

At the outset of his change of plea hearing, the Court engaged in the following colloquy with Dennis:

THE COURT: Have you gone over the indictment with your attorney and you understand the nature of the charges against you in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you discussed with your attorney all matters pertaining to your case, the evidence against you, possible defenses, things of that nature?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied so far with his work for you in this case?

THE DEFENDANT: Yes, Your Honor.

Doc. 86 at 5.   The Court then continued:

THE COURT: Mr. Dennis, I am going to refer to this plea agreement. You can read along as I go through it by page and paragraph.

Before I discuss the specific provisions of the agreement, however, did you fully read this agreement before you signed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss it in full with your attorney before you signed it?

THE DEFENDANT: Yes, I have.

Doc. 86 at 6-7.   The Court went on to examine the individual paragraphs of the plea agreement

with Dennis including an explanation of supervised release:

THE COURT: On page 3, there's a reference there at paragraph 7 to supervised release. When you are released from any period of imprisonment that might be imposed in this case, you will be placed on supervised release. That's like probation or parole in the state system. You will be required to abide by certain conditions. If you fail to abide by those conditions, then you may be returned to court. Depending on the severity of the violation, you could be sentenced or resentenced to a longer period of imprisonment.

Under some circumstances, your initial term of imprisonment, along with any additional period of imprisonment, could exceed the five-year maximum statutory penalties.

Doc. 86 at 8-9.   Dennis again indicated that he understood that provision of his plea agreement

and possible sentence.

The Court then individually explained each right that Dennis was waiving by virtue of his plea agreement.   Dennis indicated that he understood each right and the impact of his waiver of that right.   The Court then inquired: "Has anyone tried to force you, coerce you, threaten you in any way to enter this plea?" and Dennis responded: "No, Your Honor."   Doc. 86 at 22.   Dennis then acknowledged that the factual predicate in the plea agreement was a "fair and accurate summary of [his] offense conduct."   Doc. 86 at 23.

The description of Dennis' conduct was extensive in the plea agreement and contained the following statements:

b.          On or about December 21, 2016, Defendant sold 15 gift cards that Riccardi had stolen from the mail stream to the Gift Card Loop, a business in Cleveland, Ohio, that buys and sells gift cards.

c.          On or about December 23, 2016, Defendant sold 9 gift cards that Riccardi had stolen from the mail stream to the Gift Card Loop.

d.          On or about December 26, 2016, Defendant sold 8 gift cards that Riccardi had stolen from the mail stream to the Gift Card Loop.

e.          On or about February 2, 2017, Defendant sold 9 gift cards that Riccardi had stolen from the mail stream to the Gift Card Loop.

g.          On or about August 12, 2017, Defendant used nine stolen Amazon.com gift cards to order a laptop computer and an accesso1y, to be delivered to Defendants' residence.

h.          On or about August 28, 2017, Defendant used 16 stolen Amazon.com gift cards to order a 50-inch flat-screen television, to be delivered to Defendants' residence.

i.          In or around September 2017, while processing and handling U.S. mail at the USPS Processing and Distribution Center in Cleveland, Ohio, Defendant stole the mail piece identified in Count 3 of the Indictment, a letter addressed to Person 1 in Parma, Ohio, which contained a $25 Starbucks gift card.

j.          On or about September 14, 2017, Defendant used the stolen $25

Starbucks gift card to make a fraudulent purchase at a Starbucks location in Independence, Ohio.

k.          On or about September 17, 2017, Defendants used the stolen $70 Kohl's gift card to make a fraudulent purchase at a Kohl's location in Parma, Ohio.

l.          On or about September 22, 2017, Defendants used the stolen $25 Starbucks gift card to make a fraudulent purchase at a Starbucks location in Garfield Heights, Ohio.

o.          On or about December 11, 2017, Defendants possessed in their residence, among other things, the 108 pieces of First-Class U.S. mail Riccardi had stolen earlier that night, merchandise Defendants had purchased with stolen gift cards, approximately $42,000 in U.S. currency, an automatic currency counter, and 1,505 stolen gift cards for approximately 230 different merchants or vendors. Approximately 1,322 of the stolen gift cards bore face values, which totaled approximately $47,052.53. Most of the stolen gift cards were organized by merchant or category and laid out on the floor in the house.

Doc. 58 at 11-13.  In addition to the above provisions that detail Dennis' activity or the joint activity of Dennis and his co-defendant, Jennifer Riccardi, the plea agreement also contained factual allegations related solely to Riccardi's conduct.   After the description of all the conduct of both Defendants, Dennis agreed:

29.          Defendant acknowledges that the above summary of Defendant's conduct does not set forth each and every fact that the USAO could prove at trial, nor does it encompass all of the acts which Defendant committed in furtherance of the offenses to which Defendant is pleading guilty.

Doc. 58 at 13.

The above provisions and plea colloquy refute any assertion by Dennis that his heart was unsure or that his mind was confused when he entered his guilty plea.   Thus, he has failed to offer a valid reason to withdraw his plea.

Moreover, to the extent that Dennis suggests that he was coerced by DeVan to enter his guilty plea, the record similarly fails to support such a contention. First and foremost, DeVan's testimony refutes any such assertion.   DeVan unequivocally denied any conduct that would

approach coercion.   Moreover, even Dennis' testimony itself does not support a finding he was coerced.   Dennis ostensibly described a situation in which counsel was adamant that a plea agreement was the best course of action.   As Dennis had previously made an oral motion to remove counsel with whom he disagreed over strategy, it defies logic to suggest he suddenly changed course and held his will overcome by DeVan.   Further, "a defendant who expressly represents in open court that his guilty plea is voluntary 'may not ordinarily' repudiate his statements to the sentencing judge."   *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).   As detailed above, Dennis both admitted that his plea was voluntary and that he was satisfied with counsel during his plea colloquy.   He has provided no legitimate basis to repudiate those statements.

### 3.  Failure to Maintain Innocence

Dennis appears to use the history of this case in an attempt to demonstrate that he has maintained his innocence throughout the proceedings.   The record, however, does not support his contention.

Dennis testified that he told both his initial attorney, Nathan Ray, and his second attorney, Mark DeVan, that he had no knowledge of his co-defendant's activities.   Dennis' assertions in that regard, however, fall short of an assertion of innocence.   Important to this Court, even in seeking to withdraw his plea, Dennis does not deny the facts set forth in the factual predicate of his plea agreement.   Those facts include Dennis either selling or using roughly 70 gift cards to different merchants *and* residing in a home that contained 1,505 gift cards from 230 different vendors whose face values exceeded $47,000.   Thus, Dennis does not claim that he did not engage in this conduct.   Rather, he maintained then and now that he does not *believe* that they these facts should constitute a crime.   The Court believes that this falls well short of maintaining his

innocence throughout the proceedings.

### 4. Dennis' Nature and Background and Prior Experience in the Criminal Justice System

There is nothing in Dennis' background that would suggest that he did not understand the proceedings before the Court. Dennis appeared before the Court after **fifteen** prior encounters with the state court justice system that led to convictions. These encounters began in 2002 when Dennis was 18 years old and continued through 2016 when Dennis was convicted of escape at the age of 34. In fact, the conduct herein was committed while Dennis was still under post release control from a prior state court conviction. While this appears to be Dennis' first encounter with the federal system of justice, his lengthy state court history undermines any assertion that the process was unclear or confusing to him. As such, his nature and background do not support withdrawal of his plea.

### 5. Prejudice to the Government

The delay in moving forward with Dennis' sentencing caused this Court to be required to sentence his co-defendant. Allowing Dennis to proceed to trial at this time would only serve to expend even more government resources to return that co-defendant to this district for use at Dennis' trial. Moreover, even if the Court were inclined to find that any prejudice to the Government was minimal, this factor would be at best neutral with respect to evaluating Dennis' motion.

### Conclusion

As demonstrated above, none of the *Bashara* factors weigh in favor of granting Dennis' motion. Instead, the factors weigh heavily in favor of denial of the motion. Accordingly,

Dennis' motion to withdraw his guilty plea is DENIED.

     IT IS SO ORDERED.


May 26, 2020                                /s/ John R. Adams
Date                                        Judge John R. Adams
                                            United States District Court